## J. Edwin Mathews *vs.* T. Savage Heyward and others.

Where a trustee, having no such authority by the terms of the trust, invests the trust funds in the purchase of land, and gives a mortgage thereof to the vendor for an unpaid balance of the purchase money, he is guilty of a breach of trust; and if the vendor has notice, he is so far responsible for the equitable delict that he cannot enforce his mortgage without providing that the trust funds be replaced out of the proceeds of a sale of the mortgaged premises before any part thereof be applied to the mortgage debt.

Where a mortgagee is responsible for a breach of trust committed by the mortgagor, his assignee, with notice, is subject to the same equity in enforcing the mortgage to which he was subject.

Where a trustee committed a breach of trust in giving a mortgage of land held in trust, and the adult *cestuis que trust* exhibited a bill in equity against the trustee and infant *cestuis que trust*, making statements which showed that the plaintiffs had full knowledge of the circumstances, and praying that the mortgaged premises be sold—that the mortgage debt be paid out of the proceeds of the sale, and that the balance thereof be distributed among the *cestuis que trust*, and obtained a decree to that effect: *Held,* that the plaintiffs had waived their right to complain of the mortgage as a breach of trust, but that the decree was no estoppel in favor of the assignee of the mortgagee, who was no party to the proceeding, and, therefore, that the infant defendants were not barred by the decree.

At what stage of the trial of a case evidence shall be received is a matter within the discretion of the presiding Judge.

### Before CARPENTER, J., at Charleston, April, 1870.

The decree of His Honor the Circuit Judge is as follows:

CARPENTER, J.    This was a bill, filed by J. Edwin Mathews, executor, to foreclose a mortgage given by Thomas Savage Heyward, trustee, to Richard F. Reynolds, and assigned by him to the complainant in this case.

The facts appeared to be as follows: On the 15th July, 1857, Richard F. Reynolds conveyed to Thomas Savage Heyward, trustee, for the separate use of Georgiana Heyward, his wife, and of her children, appointed by the will of Miss Harriet Ann Ashe, the lot described in the pleadings, and, on the same day, T. S. Heyward, as such trustee, mortgaged the same to Richard F. Reynolds to secure a bond executed by T. S. Heyward, as such trustee, for a part of the purchase money. The bond and mortgage was afterwards assigned by Richard F. Reynolds to the complainant, J. E. Mathews, executor of William Mathews.

It appears, from the pleadings, that Reynolds sold and conveyed the premises to T. S. Heyward, as trustee, and took the cash portion of the purchase money from him, *knowing* that he was receiving trust funds, and accepted the bond and mortgage for the balance executed by T. S. Heyward, as trustee. Mr. Reynolds appears

to have been fully aware of the danger of dealing thus with a trustee, for he required Mr. Heyward then, as appears by the testimony reported by the Referee, a man in large business, and supposed, at that time, to have been a person of considerable means, to guarantee the bond in his individual capacity. By the report of the Referee, it appears that, of the purchase money of the said lot, the sum of four thousand six hundred and twenty-nine 10-100 dollars was received by T. Savage Heyward, as trustee, under the will of Harriet Ann Ashe. The pleadings and the report set forth the terms of the will in detail.

From the records of the Court it appeared that three of the defendants in this case, to wit: Annie C. Heyward, Thomas Savage Heyward, the younger, and William N. Heyward, adult children of Mrs. Georgiana Heyward, on the 29th August, 1866, filed a bill in this Court, in which, after stating the purchase of the premises with the trust funds as above mentioned, and family reasons rendering it beneficial that the same should be sold, they go on to say that besides there was due on the purchase money about $2,500, secured by a mortgage given by the trustee, and that this amount was required to be paid by the present holder of the mortgage, who had only forborne to await the issue of that application out of which he expected to be paid, and prayed that the property might be sold, the mortgage debt paid, and the balance divided among the *cestuis que trust*, under Miss Ashe's will. T. S. Heyward, trustee, and the other children of Mrs. Georgiana Heyward, all of whom were minors, answered, the latter by their guardian *ad litem*.

Under these proceedings, Chancellor Lesesné, on the 19th February, 1867, made an order, by consent of counsel, directing the sale of the premises at such time, and on such terms as might be designated in writing by a majority of the adult parties to the proceedings, provided the consent of the mortgage creditor be first had and obtained; and that from the proceeds the master should first pay the mortgage debt and the costs, and that from the balance he should pay the adults the shares to which they were respectively entitled, and hold the shares due the infants subject to the further order of the Court.

The bill, in the present case, was filed on the 17th August, 1867.

After hearing the arguments in this case, it appeared to me that the trustee, T. Savage Heyward, having invested the funds of the trust estate of his wife and children in the real estate described in

the pleadings, had no power to mortgage the trust property to secure the balance of the purchase money to the vendor, Richard F. Reynolds, who had full knowledge that the purchase was made with such trust funds, and who, by his deed, conveyed the property to the trustee as part of the trust estate, and in that deed admitted and declared that the purchase money was derived from such trust funds. The complainant is the assignee of the mortgagee, Richard F. Reynolds, and, of course, can claim no greater rights than the assignor. I am, therefore, clearly of opinion that the defendants, who were infants at the time of the filing of the bill of partition in the case of Heyward *vs.* Heyward, to which I will presently refer, are entitled to have their several shares of the trust funds invested in the mortgaged property, first paid out of the proceeds of sale of that property, before the complainant can take anything.

But in the case of Heyward *vs.* Heyward, the adult *cestuis que trust* certainly recognized the purchase, and their proceedings were instituted with a view to pay off the mortgage debt. I am, therefore, of opinion that the adult *cestuis que trust* have signified such acquiescence as estops them from now disputing the act of the trustee.

It is ordered that from the cash portion of the proceeds of the sale of the mortgaged premises, and from so much of the bond of the purchaser as may be necessary for that purpose, the Sheriff do first put aside and retain in his hands, subject to the further order of this Court, the relative proportions of the said trust funds to which the defendants, who were minors at the time of the filing of the bill in Heyward *vs.* Heyward, may be entitled, to wit : Five ninths and five-ninths of one-ninth of the amount of four thousand six hundred and twenty-nine 10-100 dollars, the amount derived as trust funds under the will of Miss Harriet Ann Ashe, and that the balance of cash and bonds he do pay over and assign to the complainant in this case.

The plaintiff appealed on the grounds :

1. That the mortgage, being given for the purchase money, was a primary lien upon the mortgaged property, and the purchase money is entitled to priority of payment out of the proceeds of sale.

2. That the breach of trust by the trustee, if any there was, could not, in proceedings for a foreclosure of the mortgage given to secure the purchase money, affect the rights of the vendor to be paid such purchase money.

3. That the filing of a bill in equity, in 1866, by certain of the

16A

*cestuis que trust,* with a view to the sale of the mortgaged premises for the payment of the mortgage debt, and a partition of the residue of the proceeds of sale, was an adoption of the act of the trustee, even if the original purchase by him had been voidable, and was an adoption and assumption of the mortgage debt; and that all the *cestuis que trust* being properly before the Court, under such proceedings, are bound by the order made under such proceedings.

The defendants also appealed, on the grounds:

1. That His Honor Judge Carpenter erred in holding that the defendants, who were adults at the time of the order of Chancellor Lesesne, made in the case of Heyward *vs.* Heyward, on the 19th February, 1867, have, by the proceedings in that cause, signified such acquiesence in the mortgage given by their trustee to Richard F. Reynolds, as now estops them from disputing that act, or resisting the claims of the complainant under that mortgage.

2. Because the proceedings in the said case of Heyward *vs.* Heyward form no part of the pleadings in this case, nor were referred to therein, and were not in evidence.

3. That His Honor Judge Carpenter erred in excluding such adult defendants from all the benefits of the decree in this case.

*W. G. DeSaussure,* for plaintiff.

*McCrady, Hanckel,* for defendants.

Jan. 16, 1871. The opinion of the Court was delivered by

Moses, C. J. If the party insisting here for a priority of payment out of the proceeds of the sale of the mortgaged premises, by reason of the investment of the moneys received by the said T. Savage Heyward, under the will of Miss Ashe, had been his wife, Georgiana, it might have been difficult to withstand the justice and equity of her demand.

The testimony shows that at the time of the purchase "he was a Director of a bank, was regarded as a man of means, and engaged in a large brokerage business on his own account." His children were then all infants, and it was his bounden duty to procure a residence for his family at his own expense. The wife died in about one year after the conveyance to him. The interest of the children in the trust fund then became immediate, after which he continued to occupy the premises, with the *cestuis que trust,* for a long period, but the precise time does not appear.

The children are to be here regarded as the parties complaining of the breach of trust, by reason of the investment made as stated in the pleadings, and it might be enough to say that it was a devotion of their funds to a purchase of real estate, which did not even yield them annual income in the way of rent. The benefit which accrued was entirely for his own interest and advantage. The possession of the residence which he acquired through their means was a profit which enured only to him, and was obtained by the investment of their whole capital in a manner which necessarily subjected it to the chances of a total loss through the lien of the mortgage for the credit portion of the purchase money.

If the conveyance had conferred on him a perfect and unincumbered title for the benefit of the *cestuis que trust*, before he could be excused from a breach of duty by the conversion of their money into real estate, he would at least be required to shew that no loss therefrom followed to beneficiaries, whose interest had been confided to his charge.

Mr. Hill, in his Treatise on Trustees, p. 377, says: "So it is unquestionably clear that trustees have no power permanently to convert the nature of the trust property, by laying out money in the purchase of real estate, unless a special authority for so doing is conferred upon them by the trust instrument."

In the case of *Morton* vs. *Adams*, 1 Strob. Eq., 76, Dunkin, Ch., held that a trustee had no authority to purchase land for, or by such purchase to bind the trust estate; that "it was not necessary, and experience has proved it to be inexpedient."

The power to convert the money into land, unless authorized by the terms of the instrument creating the trust, or permitted by the authority of the Court, is not within the competency of a trustee.

If any doubt existed as to the propriety or soundness of the general principle involved in the rule, what must be said in a Court of Equity of the application by a trustee of the money in his hands to a purchase of real estate, by advancing, of the fund, the sum of $3,666.66 as the cash payment, executing a mortgage for $7,333.40, and applying the remaining portion of the trust fund, $962.44, to the payment of the first installment due upon it, leaving it encumbered for the whole balance of principal and interest?

The bond and mortgage purported to have been executed by the trustee in his representative capacity, and, in his individual character, he guaranteed the payment of the bond. If he even had the right to change the nature of the trust fund, to what power will he

refer his authority to mortgage the land for the unpaid portion of the consideration money?

Even where a specific direction is given to invest in real securities, the trustee will only be protected by lending the money, on mortgage, to the extent of two-thirds of their value.—Hill, 368. An advance to that extent will, however, be improper, upon the security of houses or buildings which, necessarily, are of a perishable nature.—*Ibid.* Here, the manifest inducement to the purchase was a residence for the trustee himself, or for his infant children, which, at his own cost, he was bound to provide, and the whole trust fund was endangered by the amount remaining due on the mortgage being so largely in excess of the trust money advanced by him as the cash payment.

It is not pretended, on the part of the plaintiff, (Mathews,) that he did not have notice of all the circumstances attending the transaction, between T. Savage Heyward and Reynolds, in regard to the sale.

His bill alleges "that from the portion of the residuary estate which, under the said will, came to the said Georgiana, *inter alia,* the described lot of land was purchased; and the said T. Savage Heyward, husband of the said Georgiana, and instituted under the said will her trustee, took the conveyance thereof, in his name, as trustee as aforesaid, and, to secure the credit part of the purchase money, executed the aforesaid bond or obligation, and the aforesaid deed of mortgage and sale." In fact, the trust under and for which the purchase was made was expressed on the bond, mortgage and conveyance, and gave full information to Mathews, who, by the assignment, occupied the place of Reynolds, through whom he claimed. Whatever trusts, therefore, which attached on the instruments in the hands of Reynolds, were so impressed upon them, when this plaintiff substituted himself in his place with all his rights, that it constituted actual notice, thereby binding him to all the obligations and liabilities to which his assignor was subjected by the force and effect of the original transaction.

"It may be laid down as a general rule that a purchaser from a trustee with notice, though for valuable consideration, and *a fortiori* a volunteer taking with notice, is in equity bound by the trust to the same extent, and in the same manner, as the person from whom he purchased."—Hill, 165; Adams' Eq., 142; *Simons* vs. *South Western Railroad Bank,* 5 Rich. Eq., 270.

The plaintiff submits, in his first ground of appeal, "that the mort-

Columbia, April, 1870.

gage being given for the purchase money, was a primary lien upon the mortgaged property, and the purchase money is entitled to priority of payment out of the proceeds of sale." The proposition thus assumed is not denied or contradicted by anything contained in the decree. It may well be conceded; and yet the claim of the parties interested in the trust remains unaffected. The contest is as to the right of the plaintiff to the "primary lien," as between himself and the *cestuis que trust.* If their money, as they contend, paid all the cash portion of the purchase, and was also applied in part to the extinguishment of the first installment due on the bond, they claim that they are entitled to be first reimbursed through the lien which the plaintiff holds by the mortgage. In other words, to that extent the plaintiff is to be regarded as their trustee, with a lien on certain real estate, which must primarily respond to them.

"Where a trust fund is traced into land, and the fund constituted a part only of the money laid out in the purchase, the Court has usually given a lien merely on the land for the trust money and interest; but where the entire land is clearly the fruit of the trust fund, the *cestuis que trust* must, upon principle, have a right to take the land itself, whether the purchase be or not of a description authorized by the trust."—Lewin on Trusts and Trustees, 762; the same principle is recognized in Adams' Equity, 142.

In *McNeil* vs. *Monrow*, Rich. Eq. Cases, 175, the Court says: "It may be stated, as a general rule, that so long as property held in trust, or a trust fund can be traced and distinguished, it will enure to the benefit of the *cestui que trust.*"

It remains to consider the grounds of appeal presented on the part of the defendants.

The bill, in Heyward *vs.* Heyward, therein referred to, was filed long after the expiration of the interest of the life tenant in the trust.

The right of those in remainder to the possession of the fund had accrued, and it was competent to such of them as were *sui juris* to excuse or waive the breach of trust on the part of their father, by direct and express agreement, or by such act as would amount to acquiescence.

"A purchase made by a trustee is not void, but voidable at the election of the *cestui que trust* within a reasonable time. But if, after notice of the transaction, the latter confirms, or unequivocally acquiesces in the sale, this will be a ratification, both in law and equity."—Hilliard on Vendors, 398.

" A *cestui que trust* who, being *sui juris*, consents to, or acquiesces in, an investment by a trustee, cannot afterwards question its propriety."—Hill, 382.

*Lord Eldon*, in *Walker* vs. *Symonds*, 3 Swanston, 64, says: " It is established by all the cases that, if the *cestui que trust* joins with the trustees in that which is a breach of trust, knowing the circumstances, such a *cestui que trust* can never complain of such a breach of trust. I go further, and agree that either concurrence in the act, or acquiescence without original concurrence, will release the trustees; but that is only a general rule, and the Court must enquire into the circumstances which induced concurrence or acquiescence, recollecting, in the conduct of that enquiry, how important it is, on the one hand, to secure the property of the *cestui que trust*, and, on the other, not to deter men from undertaking trusts from the performance of which they seldom obtain either satisfaction or gratitude."

The decree in Heyward *vs.* Heyward might not, of itself, constitute a bar to the claim of the adults to their proportion of the trust money invested in the purchase of the land. They are not considered as restrained from asserting their original right by the force and effect of proceedings resulting in a decree operative and binding upon them; but their bill, signed by them individually, amounts to a declaration that, with full notice of the breach of trust by their trustee, they assent that, as to the mortgagee, their claim shall be subsidiary to the payment, through the land, of the amount due him on his debt.

Their bill, to which the trustee was a party plaintiff, sets forth the origin of the trust, the purchase of the premises with the fund in which they had an interest, and recognizing the property as their own, they claim partition of it by sale, and an appropriation of the proceeds, first, to pay the mortgagee his debt, and the balance to be divided among the children entitled. There is here a clear recognition of the purchase for them, and on their account, with a full knowledge and recital of the circumstances under which their trustee obtained the legal title, to their use, of the estate so sought to be subjected to sale, that, after the satisfaction of the mortgage therefrom, each might enjoy his several share in the balance. The effect of it is not only a recognition of the act of the trustee, but operates as an agreement by which they discharged him from all liability for the conversion of their trust money. When, on the death of the life tenant, the *cestuis que trust* became entitled, the

fund was free from all conditions and limitations. It was their own; they could deal with it at their pleasure, and were at perfect liberty (such of them as were of age) to confirm the act of the trustee. Their declaration in his favor enures to the benefit of the mortgagee, and having full knowledge, as is manifest from their bill, they cannot discharge themselves from the consequences which their act entailed to their own prejudice.

It is asking too much of the Court to assume that they were under "mistake of law," and in "ignorance of their rights." The presumption is the other way; and he who claims relief, upon the ground either of mistake of law or fact, must prove the existence of it, to entitle him to any relief from its consequences.

The introduction in evidence of the proceedings in Heyward vs. Heyward, at the time they were offered, was a matter entirely in the discretion of the Circuit Court. · The conduct of a case there, so far as relates to the time of the introduction of testimony on the one side or the other, must be regulated by the particular circumstances then existing, of which the presiding Judge can properly alone decide. So far have our Courts gone in this regard that, in *Browning* vs. *Huff*, 2 Bail., 175, and *Poole* vs. *Mitchell*, 1 Hill, 404, it was held that it was altogether in the discretion of the Court to permit testimony to be offered by the plaintiff after he had closed his case, and a motion for non-suit had been made and refused.

If the said proceedings had been offered in evidence by the plaintiff in this case to estop the defendants by the effect of the decretal order therein made, their competency to that end might be questioned. They were, however, competent to establish the fact, that the adult defendants here, who were then the plaintiffs, had by their bill waived the breach of trust by the trustee, and confirmed his appropriation of their funds to the purchase of the said real estate. Nor is it to be forgotten, that the said proceedings were brought to the notice and attention of the special Referee, as appears by his report.

If the decree in Heyward vs. Heyward operated through itself to preclude the adult defendants here from any benefit in the fund so misapplied by the trustee, it might have the same effect as to the parties in the cause who were infants at the time it was made. We do not, however, hold that it is valid, as a bar, even against the adult defendants, but, as we have before said, they have deprived themselves of the relief they now claim, by their confirmation of,

or acquiescence in, the breach of their trustee, declared and expressed in their bill.

The Circuit decree is affirmed, and the motion dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.